UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| VITAL BASICS, INC., | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | Civil No. 05-65-P-S |
| | ) | Bankruptcy No. 04-20734 |
| VERTRUE INCORPORATED, | ) | |
| | ) | |
| Appellee. | ) | |

**ORDER ON SECOND APPLICATION FOR ATTORNEYS' FEES**

Before the Court is Vertrue Incorporated's Second Application for Attorneys' Fees (Docket # 44). As explained below, the Court hereby GRANTS the Motion.

**I.  BACKGROUND**

This Motion is the latest chapter in a longstanding dispute between Vertrue Incorporated ("Vertrue") and Vital Basics, Inc. ("VBI"), which has its roots in a 2001 written marketing agreement, known as the "Memberlink Agreement" (Ex. A to Docket # 44). Pursuant to the terms of the Memberlink Agreement, Vertrue made a demand for arbitration in September 2003. Before any arbitration hearings could be held, VBI filed for Chapter 11 bankruptcy protection on May 10, 2004. With the approval of the Bankruptcy Court, arbitration hearings were ultimately held in September and October 2004.

The end result of the arbitration was an arbitration award in favor of Vertrue, which was transmitted to the parties on December 2, 2004 (the "Arbitration Award" (Ex. B to Docket # 44)). Specifically, the panel of three arbitrators ruled against VBI and awarded Vertrue damages totaling $4,898,538.00. Notably, the Arbitration Award did not actually make an explicit award of attorneys' fees pursuant to the Memberlink

1

Agreement. Rather, the Award included a punitive damage award under the Connecticut Unfair Trade Practices Act ("CUTPA") for $1,340,000.00 and, in doing so, noted that this punitive damage award included Vertrue's "reasonable attorneys' fees and costs in the amount of $840,000." (Arbitration Award ¶6.) Nonetheless, the Arbitration Award explicitly explained:

> [Vital Basics] is also liable under the terms of the underlying agreement for [Vertrue]'s reasonable attorneys' fees and costs in the amount of $840,000.00. However, the arbitrators have not awarded counsel's fees and expenses as an item of compensatory damage because the arbitrators have awarded that sum as being within the amount of the punitive award under the Connecticut Unfair Trade Practices Act.

(Arbitration Award ¶3.)

Ultimately, the Bankruptcy Court confirmed the Arbitration Award in its entirety and allowed Vertrue's claim for the entire amount of the Arbitration Award. VBI appealed these Bankruptcy Court rulings to this Court. After full briefing, this Court affirmed the Bankruptcy Court's rulings via an Order entered on November 3, 2005. See Vital Basics, Inc. v. Vertrue Inc., 332 B.R. 491, 494 (D. Me. 2005). VBI then took its appeal to the First Circuit. On December 26, 2006, the First Circuit affirmed this Court's November 3, 2005 Order and concluded that "VBI must now abide by the reasonable conclusions reached by the arbitration panel." In re Vital Basics Inc., 472 F.3d 12, 18 (1st Cir. 2006).

While the First Circuit appeal was pending, Vertrue initially filed an application for attorneys' fees on December 6, 2005. Due to the then-pending appeal, this Court denied the request without prejudice due to lack of jurisdiction. (See Order on Application for Attorneys' Fees (Docket # 39).) In accordance with Local Rule 54.2, Vertrue has renewed its claim for attorneys' fees via the pending Motion and seeks to

2

recover fees and expenses that were incurred during the post-arbitration proceedings to enforce the arbitration award. According to the papers filed by Vertrue, these fees and expenses were incurred over the two year period between December 2, 2004 and December 29, 2006. (See Exs. A-W to Aff. of Steven M. Cowley (Docket # 45) ("Cowley Aff.").)

## II.   DISCUSSION

Vertrue seeks an award of $196,557.73 in attorneys' fees and disbursements. The Court reads Vertrue's Motion as invoking four separate grounds for this award: (1) Section 13 of the Memberlink Agreement; (2) CUTPA; (3) Federal Rule of Civil Procedure 11; and (4) 28 U.S.C. § 1927.  Before addressing these various substantive bases for an award of attorneys' fees, the Court pauses to consider whether this Court is in fact the proper forum for Vertrue's latest attorneys' fee application. For its part, VBI first argues that Vertrue may only seek additional attorneys' fees via a second round of arbitration. In short, the Court rejects this argument, which would simply create "endless and multiplicitous" litigation between the parties. Universal Computer Services, Inc. v. Dealer Services, Inc., No. 02-CV-6563, 2003 WL 21685567 at *2 n.3 (E.D.N.Y. July 18, 2003) (rejecting a similar argument "since it would require a successful party in the arbitration proceeding to move for judicial confirmation of the fee award, then return to the arbitrator to obtain an additional award for fees incurred in confirming the first fee award, return to the court to have that award confirmed, an so on, *ad infinitum*").

Alternatively, VBI claims that the current Motion belongs to the Bankruptcy Court. This argument is similarly unavailing since the Bankruptcy Court simply does not have jurisdiction over a claim for attorneys' fees incurred between December 2004 and

December 2006, which is indisputably a post-petition claim.  See In re Waterman, 248 B.R. 567, 573 (8th Cir. B.A.P. 2000).  In addition, the Bankruptcy Court actually confirmed VBI's reorganization plan on December 29, 2004.  To the extent that Vertrue's Motion mainly seeks to recover fees that are both post-petition and post-confirmation, there would appear to be no basis for the Bankruptcy Court to exercise "related to" jurisdiction over the fee request.  See, e.g., In re Boston Reg'l Med. Ctr., 410 F.3d 100, 105-107 (1st Cir. 2005) (noting that "related to" jurisdiction "must be determined case-by-case" and distinguishing between post-confirmation jurisdiction for "liquidating plans" versus "true reorganization plans").

In short, the Court is satisfied that it has jurisdiction to decide the pending Motion and that this Court represents the most efficient venue for resolving the issue of additional attorneys' fees having considered all three potential venues (i.e., arbitration, Bankruptcy Court or this Court) for such a motion.

Turning to the question of whether there is a basis for awarding attorneys' fees, the Court looks first at the Memberlink Agreement.  Section 13 of the Agreement reads in relevant part:

> Each Party . . . hereby agrees to indemnify and hold the other party, its officers, directors, employees, shareholders, agents, subsidiaries, affiliates, successors, and permitted assigns . . . harmless from and against all demands, claims, actions or causes of action, assessments, losses, damages, liabilities, cost and expenses, including without limitation to interest, penalties and reasonable attorneys' fees and expenses . . . resulting from any material breach . . . .

(Memberlink Agreement (Ex. A to Docket # 44) at VBI0049.)  This language clearly and explicitly contemplates that a successful party is entitled to an award of reasonable

4

attorneys' fees and expenses. Moreover, the Arbitration Award acknowledged that this provision made VBI liable for attorneys' fees.

VBI nonetheless responds that it is no longer bound by the terms of the Memberlink Agreement because the Agreement amounts to an executory contract that VBI implicitly rejected pursuant to the terms of its confirmed reorganization plan. VBI is certainly correct that under the terms of its reorganization plan any executory contract that was not explicitly assumed by VBI on or before March 29, 2005 is deemed rejected as of May 10, 2004. However, VBI's characterization of the Memberlink Agreement as an executory contract flies in the face of the confirmed Arbitration Award. Quite simply, the Arbitration Award held that VBI had breached the exclusivity clause of the Memberlink Agreement as of August 6, 2003 by selling a competitive membership plan. Given the timing and proactive nature of this breach, the Memberlink Agreement was no longer an executory contract on May 10, 2004. See In re Monge Oil Corp., 83 B.R. 305, 306-07 (E.D. Pa. 1988) (explaining that the Code does not define "executory contract" but gathering citations in support of defining executory contract to include those contracts for which "performance remains due for both parties"). For this Court to now hold otherwise would contravene the Arbitration Award as well as the multiple court rulings affirming the Award.[1] See In re Murtishi, 55 B.R. 564, 567 (N.D. Ill. 1985) (explaining "when the debtor has not only failed to perform but has breached the contract pre-petition with the result that the other party has no further duty to perform, . . . the contract is no longer executory for purposes of [the Bankruptcy Code]").

---

[1] To the extent that VBI argued in the context of the Arbitration that the Memberlink Agreement somehow remained in effect through June 2011 thereby entitling VBI to damages, those arguments were clearly rejected by the rulings of the arbitration panel, the Bankruptcy Court, this Court and the First Circuit.

5

Having found no merit to VBI's argument that the Memberlink Agreement was rejected under the terms of the reorganization plan, the Court holds that the plain language of the Agreement (as acknowledged in the Arbitration Award) requires an award of reasonable attorneys' fees and expenses for the time and effort expended in securing confirmation of the Arbitration Award through VBI's multiple appeals. In light of this holding, the Court declines to address Vertrue's asserted alternative bases for seeking attorneys' fees.[2]

The only issue that remains is the reasonableness of the requested amount, which totals $196,557.73. In assessing the reasonableness of the fee request, the Court has carefully reviewed the detailed bills submitted by Attorney Steven Cowley. It has also carefully considered all of the objections included in VBI's Objection. The Court begins by noting that VBI has not objected to the reasonableness of the various attorney fee rates that are listed in Attorney Cowley's Affidavit.[3] (See Cowley Aff. ¶¶6-9.) Rather, VBI focuses its particular objections on the hours expended as well as various categories of time that it does not believe to be reasonably included in the fee request. For instance, VBI objects to "an incredible amount of attorneys' fees billed at .1 or .2 or .3 time increments, whereby Attorney Cowley met and conferred with his colleagues and, in turn, his colleagues met and conferred with him." (VBI Obj. (Docket # 46) at 17.) Based

---

[2] Nonetheless, on the record presented, the Court notes that it would not find the actions undertaken by VBI in the context of this litigation to rise to the level of bad faith, frivolous and/or vexatious as required to support an award under either Rule 11 or 28 U.S.C. § 1927.

[3] Notably, for those months in which Vertrue seeks to recover fees less than the total amount invoiced, it appears that the hourly rates billed by attorneys other than Steven Cowley may have in fact been lower than the rate listed in the Cowley Affidavit. (See, e.g., Cowley Aff. ¶¶ 12-16.) Because these presumably lower billing rates ultimately inure to the benefit of VBI, the Court will not ask Vertrue to correct the information. Instead, the Court has limited Vertrue to the amount explicitly requested in this situation, which is less than the amount the Court calculated when it multiplied the hours listed by the billing rate listed in the Cowley affidavit.

6

on the Court's review of the submitted billing records, this objection is without merit. The Court concludes that the amounts billed for conferring between various Vertrue attorneys reflects a reasonable expenditure of time.

VBI also argues that the Court should exclude all entries related to mediation and other settlement efforts. In short, there is no basis in the existing case law or logic for adopting a rule that time expended on attempted settlement or mediation should be considered per se unreasonable. Absent some sort of proffer that either Vertrue's counsel did not participate in settlement or mediation in good faith or that the amount of time Vertrue's counsel spent on settlement far exceeded reasonable limits, the Court finds that Vertrue's attorneys are entitled to recover fees for the time spent on mediation and settlement negotiations that were unfortunately unsuccessful.

To the extent VBI also objects to time billed by Vertrue related to the filing of a supplemental appendix with the First Circuit, the Court concludes that this objection is similarly meritless. Based on the material provided to this Court and a review of the available First Circuit docket, it appears that the First Circuit accepted Vertrue's supplemental appendix in connection with the appeal. Thus, the Court cannot say that the time spent on the supplemental appendix was unreasonable. Moreover, the Court notes that VBI's objections to the supplemental appendix filing appeared to add to the overall amount of time billed to this matter.

VBI's remaining objections deal not with the attorneys' fees specifically but rather the expenses billed by Vertrue's attorneys. In light of the fact that the Memberlink Agreement refers to fees *and expenses*, the Agreement clearly contemplates that Vertrue may seek reimbursement of reasonable expenses in addition to its fees. Thus, the Court

finds the VBI's categorical objection to requested expenses to be without merit. To the extent that the expenses and disbursements exceed what could be recovered as "costs," it is generally understood that such expenses often exceed what may be recovered via a bill of costs. See, e.g., Wright & Miller, Federal Practice & Procedure § 2666 ("'Expenses,' of course, include all the expenditures actually made by a litigant in connection with the action. Both fees and costs are expenses but by no means constitute all of them."). However, the Court notes that upon review of the records it does appear that Vertrue has failed to deduct from its submitted expenses the $216.70 it was awarded pursuant to the bill of costs it previously submitted to the First Circuit. (See VBI Obj. Ex. T & Cowley Aff. Ex. T.) Therefore, the Court will deduct this amount from the total amount awarded pursuant to the pending Motion.

The Court includes one other deduction in its ultimate award. On the June 26, 2006 invoice (Cowley Aff. Ex. P), Attorney Cowley represents that Vertrue seeks fees and expenses totaling $2,240.61. According to his affidavit, this amount represents 1.85 hours of Attorney Cowley's time and 0.4 hours of Attorney Dubnoff's time as well as related communications charges. (Cowley Aff. ¶27 & Ex. P.) By the Court's own calculations, 1.85 hours of Attorney's Cowley's time should yield a charge of $906.50; 0.4 hours of Attorney's Dubnoff's time yields a charge of $142; the related communications charge would be $20.97. This yields a total monthly charge of $1,069.47. This amount is $1,171.14 lower than the $2,240.61 requested and the Court therefore will deduct an additional $1,171.14 from Vertrue's total request. After deducting $216.70 and $1,171.14, the amount of attorneys' fees and expenses to be recovered based on Vertrue's Second Application for Attorneys' Fees is $195,169.89.

Finally, the Court notes that on the record presented, there is simply no basis for allowing additional discovery and/or an evidentiary hearing pursuant to Rules 43(e) and 54(d)(2)(C).  To the extent VBI's Objection included a request for additional discovery and a hearing on this attorneys' fee application, that request is DENIED.

## III.    CONCLUSION

As just explained, the Court hereby GRANTS Vertrue Incorporated's Second Application for Attorneys' Fees (Docket # 44) and awards Vertrue reasonable attorneys' fees and expenses in the amount of $195,169.89.

SO ORDERED.

/s/ George Z. Singal
Chief U.S. District Judge

Dated this 3rd day of May 2007.