*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | | |
|---|---|---|
| *VITAL BASICS, INC.,* | ) | |
| | ) | |
|     *Plaintiff-Appellant* | ) | |
| | ) | |
| v. | ) | *Docket No. 05-65-P-S* |
| | ) | *(Consolidated)* |
| *VERTRUE INCORPORATED,* | ) | |
| | ) | |
|     *Defendant-Appellee* | ) | |

*MEMORANDUM DECISION ON MOTION TO STOP BUSINESS INTERFERENCE*

Before the court is the motion of Vital Basics, Inc. to stop "business interference" by Vertrue Incorporated. I deny the motion.

**I. Procedural Background**

This proceeding began as two appeals from actions of the bankruptcy court. Docket Nos. 1, 5. After Judge Singal of this court affirmed the bankruptcy court's decisions at issue, Docket No. 20, a further appeal was taken to the First Circuit Court of Appeals, Docket No. 21. After notice of that appeal had been filed, Vertrue filed a motion for an award of attorney fees. Docket No. 32. After the First Circuit also affirmed, Docket No. 42, Vertrue renewed its request for attorney fees, Docket No. 44, and on May 3, 2007 Judge Singal awarded Vertrue $195,169.89 in attorney fees and expenses, Docket No. 49. Vertrue obtained a writ of execution for this amount on July 5, 2007. Docket No. 50. At the request of counsel for Vertrue, a disclosure hearing was scheduled in this court for October 11, 2007. Docket No. 55. At the request of counsel, this hearing was rescheduled to October 18, 2007, Docket No. 58, the day after related proceedings were scheduled to take place in the bankruptcy court.

1

In the meantime, Vertrue had the United States Marshal serve the writ of execution on Wal-Mart Stores, Inc., a customer of Vital Basics. Docket No. 61.

This event triggered the filing of a pleading entitled Emergency Motion of Vital Basics, Inc. to Stop Business Interference by Vertrue Incorporated ("Emergency Motion") (Docket No. 62), in which it asked this court to "stay all collection efforts except those specifically authorized by this Court, after notice and hearing[,]" *id*. at 3. Vertrue's first argument in its memorandum of law submitted in opposition to this motion was that Vital Basics lacked standing to pursue its motion because the only entity potentially harmed by a direct payment from Wal-Mart to Vertrue would be Visionary Investments Limited Partnership ("VILP"), which had extended a loan to Vital Basics that was secured by Vital Basics' accounts receivable. Vertrue Incorporated's Objection to Emergency Motion of Vital Basics, etc. ("Emergency Opposition") (Docket No. 69) at 6. On the same day that Vertrue filed its opposition, VILP filed a motion to intervene. Docket No. 74. Oral argument on both motions was held before me on the next day, September 27, 1007, Docket No. 79, and at that time I set deadlines for further filings by all parties. Those documents have now been filed. I granted the motion to intervene earlier today.

## II. Discussion

Vital Basics asks this court to stay all of Vertrue's efforts to collect its attorney-fees judgment against Vital Basics "except those specifically authorized by this Court, after notice and hearing, and in compliance with the rules of law applicable to proceedings under Rule 69(a)." Emergency Motion at 3. It contends that it is entitled to this rather extraordinary relief because Vertrue's recent service of a writ of execution on Wal-Mart, one of Vital Basics' customers, "would impermissibly and unlawfully interfere with a perfected security interest held by . . . [VILP,]" "threatens to cut off necessary revenues to Vital Basics at [a] critical juncture" in its recovery from bankruptcy

reorganization, and "deprives this Court, as a practical matter, of the very jurisdiction over Vital Basics' means of satisfaction of the judgment that Vertrue invoked when it filed . . . Rule 69(a) proceedings." *Id*. at 2-3.  I conclude that Vertrue's actions have done none of these things.

Vital Basics granted VILP a first priority security interest in its assets, including its accounts receivable, under the Revolving Loan and Security Agreement and a note dated July 1, 2005, which are Exhibits A and B to the affidavit of Gil Breiman (Docket No. 63).  *See* Revolving Loan and Security Agreement ("Loan Agreement") (Exh. A to Affidavit of Gil Breiman) ¶¶ 2.1 & 2.2(b).  Use of the collateral secured by the loan is limited by the agreement to uses "in the ordinary course of Borrower's business."  *Id*. ¶ 2.3.

In July 2007 Vertrue filed a motion in the bankruptcy court asserting that Vital Basics was in default under its plan of reorganization.  Emergency Motion at 4.  Hearing on that motion was scheduled for today.  *Id*. at 5.  On August 23, 2007 Vertrue commenced a disclosure proceeding against Vital Basics in this court under Fed. R. Civ. P. 69(a), which directs this court to employ the procedures used by the Maine state courts to obtain disclosure of the assets of a debtor.  Docket No. 55.  The hearing in this disclosure proceeding was originally scheduled for October 11, 2007 but was moved to October 18, 2007 with the agreement of the parties in light of the hearing scheduled in the bankruptcy court for today.  Emergency Motion at 5.  On September 10, 2007 Vertrue had the United States Marshals Service serve the writ of execution on Wal-Mart.  *Id*. & Exh. 1.

Vital Basics first contends that, because Vertrue has initiated disclosure proceedings under Maine law, it may not use another method of collecting its judgment at the same time.  Emergency Motion at 6-10; Supplemental Memorandum in Support of Emergency Motion of Vital Basics, Inc., etc. ("Supplemental Emergency Memorandum") (Docket No. 82) at 8-10.  Of course, Vertrue may recover the full amount of its judgment only once.  Beyond that fact, however, Vital Basics' analysis is

3

erroneous. The procedures for enforcement of money judgments under Maine law are by the terms of the applicable statute "not an exclusive procedure." 14 M.R.S.A. § 3120. In *Hamill v. Liberty*, 1999 ME 32, 724 A.2d 616, the Maine Law Court rejected the debtors' argument that because the plaintiff chose to seek a writ of execution and to initiate disclosure proceedings against the defendants he was precluded from exercising his right as a secured creditor to sell the collateral in satisfaction of the debt, *id*. ¶¶ 3 & 5, 724 A.2d at 617-18. The Law Court cited with approval, *id*. ¶ 5 n.4, 724 A.2d at 618 n.4, *Glamorgan Coal Corp. v. Bowen*, 742 F. Supp. 308, 311 (W.D. Va. 1990), and *Bank One Akron, N.A. v. Nobil*, 610 N.E.2d 538, 541 (Ohio App. 1992). In *Bowen*, the court reviewed existing case law and found that the cases in which courts disallowed a creditor's use of simultaneous remedies "involve creditors who have either abused their statutory rights or gone outside the appropriate bounds to recover their debt." 742 F. Supp. at 310. In any other situation, the courts "have determined that the creditor may seek alternative remedies at the same time." *Id*. The court noted that a potential for abuse exists where a creditor might seek inconsistent or unauthorized means of satisfying the debt, *id*. at 311, but that is not the case here. The *Nobil* court's decision is similar. 610 N.E.2d at 642-43.

In its supplemental memorandum, Vital Basics argues, without citation to authority, that the simultaneous use of legal remedies must end where it "results in the loss by the judgment debtor of a substantial right afforded by law under either one or both of the remedies chosen by the judgment creditor." Supplemental Emergency Memorandum at 9. To the contrary, if a judgment creditor chooses to employ two simultaneous remedies, a process specifically allowed by Maine law, the judgment debtor may not claim the "rights" granted to it by one of the remedies and thereby force the creditor to forgo the use of the other.

4

Vital Basics' final argument on this point is that the doctrine of election of remedies precludes Vertrue's use of any remedy other than the disclosure hearing. *Id*. at 9-10. However, by the terms of the statement quoted in Vital Basics' own memorandum, that doctrine only applies when the remedies sought by a plaintiff at the inception of or during litigation are inconsistent or repugnant. This matter concerns a post-judgment attempt to recover a money judgment. In addition, as yet the methods pursued by Vertrue are not inconsistent or repugnant.

VILP adds the argument that Maine's execution statutes prohibit Vertrue from taking Vital Basics' Wal-Mart receivables, citing 14 M.R.S.A. §§ 4751 and 4762. Memorandum of Visionary Investment Limited Partnership in Support of Intervention and of Staying Plaintiff Vertrue's Efforts to Seize and Collect Accounts Receivable (Docket No. 81) at 9-10. However, it is clear from the context of those statutes that they apply only to property seized and sold on execution. Both statutes are part of Subchapter III of Chapter 509 of Title 14; the subchapter is entitled "Sales on Execution." Section 4751 is entitled "Goods sold on execution." The only sentence of that section that could possibly be applicable to Vertrue is the first: "All chattels, real and personal[,] liable at common law to attachment and not exempted therefrom by statute, may be taken and sold on execution as prescribed in this subchapter and subchapter IV." 14 M.R.S.A. § 4751. Accounts receivable are subject to attachment, *see Citizens Bank New Hampshire v. Acadia Group Inc.*, 2001 ME 41, ¶¶ 3, 8-11, 766 A.2d 1021, 1022, 1023-24, but Vital Basics' Wal-Mart receivables need not be sold to satisfy Vertrue's judgment once they have been seized. Section 4762 is entitled "Proceeds of sale of mortgaged property; sale without tender." Again, no sale of "property mortgaged or pledged" is involved in Vertrue's execution on Vital Basics' Wal-Mart receivables. These statutes apply only to a sale on execution and thus do not support Vital Basics' and VILP's position.

Vertrue's position on the effect of VILP's perfected security interest in Vital Basics' Wal-Mart receivables under the Uniform Commercial Code requires careful scrutiny. Vital Basics asserts that "[i]t is well settled law that a perfected security interest takes priority over the rights of a judgment creditor serving an execution[,]" citing a decision of the New Jersey Superior Court. Supplemental Emergency Memorandum at 3-4. Vertrue responds that it may take Vital Basics' Wal-Mart receivables directly from Wal-Mart because VILP has not taken any action to enforce its undisputed perfected security interest in those funds. Vertrue Incorporated's Supplemental Brief in Support of its Objection to Emergency Motion, etc. ("Vertrue Supplemental Memorandum") (Docket No. 84) at 2-7. Vertrue cites no authority other than sections of the Uniform Commercial Code as it has been adopted by the Maine Legislature in support of this argument and its companion argument that VILP and Vital Basics have no interest at all in any funds in the hands of Wal-Mart. The New Jersey case cited by Vital Basics, *Shaw Mudge & Co. v. Sher-Mart Mfg. Co.*, 334 A.2d 357 (N.J. Super. App. Div. 1975), holds as follows:

> The fact that at the time of the levy there may not yet have been a default on the bank loan to which the security agreement related is not determinative here. The rights of the parties were fixed, not when the levy was made, . . . but rather when the security interest attached. Thus, while a debtor's rights in collateral may be voluntarily or involuntarily transferred, including by way of levy, such transfer would still be subject to a perfected security interest.

334 A.2d at 360 (citation omitted). The New Jersey court cited decisions from Massachusetts, Georgia, Nevada, New York, North Carolina, Oregon, Pennsylvania and Texas for the proposition that "in the absence of a statutory or common law exception, . . . a secured creditor who has duly filed a financing statement is entitled to priority over a subsequent lien creditor seeking to levy on or otherwise claim the same collateral." *Id*. at 359. Noting the fact that "the prior perfected secured creditor may regain possession of the collateral from an officer who has levied on the property at the

6

direction of a judgment creditor," the Court of Appeals of Texas added Florida, Utah and New Hampshire to the list of states. *Grocers Supply Co. v. Intercity Investment Props., Inc.*, 795 S.W.2d 225, 226-27 (Tex. App. 1990). The Texas court also noted that Wisconsin was the only state that did not follow this interpretation of the Uniform Commercial Code. *Id*. at 226.

In 1990 the United States District Court for the District of Columbia attempted to distinguish these cases in *Martens v. Hadley Mem. Hosp.*, 729 F. Supp. 1391 (D.D.C. 1990). It opined that '[d]efault is . . . the essential prerequisite to the exercise of the secured parties['] rights. In the absence of such, a secured creditor cannot . . . prevent another creditor of the debtor from taking possession of the collateral." 729 F.Supp. at 1393 (citing cases from Missouri and New York). This is essentially the position taken by Vertrue. The jurisdictions' positions are not as uniform as Vital Basics has represented.

I prefer to focus on Maine law, which is the appropriate law to apply if it addresses this question. The "Maine Code Comment" to section 9-311 of the Uniform Commercial Code (11 M.R.S.A. § 9-311), and the language of that section and 14 M.R.S.A. § 4251, to which the comment refers, convince me that Vital Basics' receivables may be subjected to a writ of execution on a judgment so long as VILP, which holds a secured interest in those receivables, has not declared Vital Basics to be in default or taken action to have those receivables paid directly to VILP.

This conclusion makes it unnecessary to consider Vertrue's remaining arguments — (i) that Vital Basics lacks standing to bring the emergency motion because its judgment is an expense incurred in the "ordinary and usual operation of" Vital Basics' business and therefore Vital Basics is expressly allowed by the terms of its security agreement with VILP to pay the judgment without regard to the security interest, Emergency Opposition at 2-6, and (ii) that neither Vital Basics nor VILP can claim injury from Vertrue's execution on its judgment because the VILP loan to Vital Basics is "fully or even

7

overly secured," *id*. at 11-12. Vital Basics suggests that both it and VILP will "suffer significant injury" if Vertrue is allowed to proceed with its execution, because Vital Basics' "relationship with one of its key customers" will be "jeopardize[d]" and because Vertrue will be "impermissibly interfer[ing] with VILP's security interests." Emergency Motion at 9. I have already indicated my view that the latter allegation is incorrect under Maine law. The former injury could be avoided at any time by Vital Basics were it to pay the judgment, which from all that appears would be considered an ordinary and usual business expense under the terms of its loan agreement with VILP and, since by Vital Basics' own account, more than enough to pay that judgment remains in the authorized revolving loan, *id*. at 4.

## III. Conclusion

For the foregoing reasons, the emergency motion of Vital Basics, Inc. to stop business interference by Vertrue is **DENIED**.

Dated this 17th day of October, 2007.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge